### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**LYMON BELL,**

      **Petitioner,**

**vs.**                              **Case No. 4:13cv342-WS/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,**[1]

      **Respondent.**

                                            /

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner Lymon Bell, proceeding pro se, filed a 28 U.S.C. § 2254 petition on June 3, 2013. ECF No. 1. Petitioner also filed a supporting memorandum. ECF No. 2. On December 17, 2013, Respondent filed an answer, with exhibits. ECF Nos. 13 and 14. Petitioner filed a reply on January 22, 2014, with exhibits. ECF No. 17.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration

---

[1]The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida Department of Corrections, for Michael D. Crews. Julie Jones became Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

of all issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this matter.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief, and the § 2254 petition should be denied.

## Procedural Background

By information filed on July 1, 2008, in the Second Judicial Circuit,

Franklin County, in case number 08000164CFMA, the State of Florida

charged Petitioner Bell with one count of lewd and lascivious molestation of

a child under the age of 12, a life felony, in violation of section 800.04(5)(b),

Florida Statutes.  ECF No. 13 Ex. C at 15.[2]  Bell proceeded to a jury trial on

April 15 and 16, 2009, and the jury found him guilty as charged.  Ex. C at

71 (verdict); Ex. F (trial transcript).  The state trial court adjudicated him

guilty and, in a judgment and sentence rendered May 11, 2009, sentenced

him to life in prison, with credit for 326 days time served.  Ex. C at 104-11;

Ex. G (sentencing transcript).

---

[2]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits
submitted with Respondent's answer, ECF Nos. 13 and 14.

Bell appealed his conviction and sentence to the First District Court of Appeal (DCA), assigned case number 1D09-2350. Ex. H (Initial Brief); Ex. I (Answer Brief); Ex. J (Reply Brief). On November 23, 2010, the First DCA per curiam affirmed the case without a written opinion. Ex. K; Bell v. State, 48 So. 3d 839 (Fla. 1st DCA 2010) (table). The mandate issued on December 9, 2010. Ex. L.

On July 14, 2011, Bell, through counsel, filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in the state trial court, raising two ineffective assistance of counsel (IAC) claims. Ex. N at 710-15. The state post-conviction court summarily denied the Rule 3.850 motion by order rendered February 27, 2012, with attachments. *Id.* at 854-1055. Bell appealed, pro se, to the First DCA and filed an initial brief in case number 1D12-2028. Ex. O. The State filed a notice that it would not file an answer brief. Ex. P. The First DCA per curiam affirmed the case without a written opinion on August 23, 2012. Ex. Q; Bell v. State, 98 So. 3d 570 (Fla. 1st DCA 2012) (table). Bell filed a motion for rehearing, Ex. R, which the First DCA denied by order on October 11, 2012, Ex. S. The mandate issued on October 29, 2012. Ex. T.

On December 4, 2012, Bell filed a petition alleging ineffective

assistance of appellate counsel in the First DCA.  Ex. V.  The First DCA

denied the petition on the merits on January 10, 2013.  Ex. W; Bell v. State,

105 So. 2d 602 (Fla. 1st DCA 2013).

As indicated above, on June 3, 2013, Bell filed a § 2254 petition and

supporting memorandum in this Court.  ECF Nos. 1 and 2.  Bell raises four

grounds, all alleging IAC:

> (1) IAC – Failure to Challenge Competency of Child Witness:
> The trial court erred in denying Bell's claim of IAC "for defense
> counsel failing to challenge the competency of the child
> witness; and the child's competency was a material aspect of
> the trial."  ECF No. 1 at 4.

> (2) IAC – Failure to Object to Leading Questions:  The trial
> court erred in denying Bell's claim of IAC "for failing to object to
> leading questions" used by the State to demonstrate the child
> witness was capable of recollecting facts.  *Id.* at 7.

> (3) IAC – State's Motion in Limine:  The trial court erred in
> denying Bell's IAC claim "for failing to object when defense
> counsel KNEW the prosecutor in this case KNEW that Ms.
> Alicia Woods had made prior false allegations against David
> Curry for molesting their son years prior to this incident, and
> Alicia Woods had made multiple false reports to DCF regarding
> the children 'they' (Alicia Woods and David Curry) have in
> common."  *Id.* at 10.  The trial court erred in denying Bell's IAC
> claim "when defense counsel failed to properly object and
> argue against the prosecutor arguing a Motion in Limine to
> have this previous false molestation allegations made by the

ex-wife Alicia Woods suppressed for trial, all in violation of Giglio v. U.S., 405 U.S. 150 (1971)." *Id.* at 10.

(4) IAC – Cumulative:  Bell was cumulatively deprived of his right to effective assistance of counsel.  *Id.* at 14.

Respondent has filed a response, with exhibits.  ECF Nos. 13 and 14.  Bell has filed a reply.  ECF No. 17.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011); Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker, 633 F.3d

1272 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential

standard for evaluating state-court rulings, which demands that state-court

decisions be given the benefit of the doubt.'"  Cullen, 131 S.Ct. at 1398

(quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford v.

Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the

record that was before the state court that adjudicated the claim on the

merits."  Cullen, 131 S.Ct. at 1388.

For claims of ineffective assistance of counsel, the U.S. Supreme

Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland, 466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant

must show that counsel's performance fell below an objective standard of

reasonableness."  Id. at 688.  To demonstrate prejudice, a defendant "must

show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

## Ground 1:  IAC – Failure to Challenge Competency of Child Witness

In his first ground, Petitioner Bell argues his trial counsel provided ineffective assistance by failing to challenge the competency of the child witness, the victim in the case, and the state court erred in denying this IAC claim. ECF No. 1 at 4. Bell raised this claim in his Rule 3.850 motion in state court. Ex. N at 711-13. In denying the claim, the state post-conviction trial court made the following findings:

> Defendant claims that counsel was ineffective for failing to challenge the competency of the infant witness and victim. Defendant's claim is conclusively refuted by the record.  At trial the witness gave testimony that she understood the difference between the truth and a lie, and that it was wrong to tell a lie. *Exh. 2 - Trial Transcript pp. 128-29.*  Moreover, the victim's mother and the social worker, Ms. Henchy, testified that the victim understood the need to tell the truth and was not prone to telling lies.  *Exh. 3 - Pre-trial Motion pp. 44-45, 77-78.*  Under such circumstances, the Court would not have found the witness to be incompetent had counsel raised the issue.  *See J.B.J. v. State*, 17 So. 3d 312, 317 (Fla. 1st DCA 2009) (outlining standard that court's should apply when the competency of a witness is at issue).  Consequently, Defendant cannot establish deficient performance or prejudice.  *See Strickland v. Washington*, 466 U.S. 668 (1994).  This claim is denied.

*Id.* at 854-55.  This ruling, affirmed on appeal without opinion, is entitled to deference and review is limited to the record before the state court.  *See* Cullen, 131 S.Ct. at 1388.

The exhibits in the record support the state post-conviction trial court's findings and determination that Bell did not prove deficient performance or prejudice.  Specifically, the trial transcript supports the court's finding that the child victim, who was seven years old at the time of the trial, testified she understood the difference between a truth and a lie and it was wrong to tell a lie:

Q C.W., do you know the difference between telling the truth and telling a lie?

A Yes.

Q If I told you there were puppy dogs in the courtroom right now, would that be the truth or would that be a lie?

A Lie.

Q And why would that be the lie?

A It's not in here.

Q There's none in here.  Is that a good thing or a bad thing to tell a lie?

A Bad.

Q And are you here to tell us the truth today?

A Yes.

Q And do you know what happens if you tell a lie?

A No.

Q Do you get in trouble?

A Yes.

Ex. F at 128-29; *see id.* at 50, 127 (concerning child victim's age).

In addition, the record supports the court's finding that "the victim's mother and the social worker, Ms. Henchy, testified that the victim

understood the need to tell the truth and was not prone to telling lies."

During a pretrial hearing on motions in limine, the judge questioned the

victim's mother, Alicia Woods:

> THE COURT: So you would say though generally she is pretty typical for a seven year old?
>
> MS. WOODS: Yes, sir.
>
> THE COURT: What about physically?  Is she pretty typical for a seven year old?
>
> MS. WOODS: Yes, sir.
>
> THE COURT: What about, you know, in terms of her telling the truth historically?  What would you say in terms of – not in this issue but, I mean, on any other issue.  How –
>
> MS. WOODS: She tells the truth.  I mean, she doesn't have a reason to lie to you because she knows that she has a consequence for what happens if she tells a lie and C.W. is a child that – she is an excellent child.
>
> THE COURT: And so typically she tells you the truth?
>
> MS. WOODS: Yes, sir.
>
> THE COURT: She's not one to come up with a bunch of stories –
>
> MS. WOODS: No, sir.
>
> THE COURT:  – or fibs or anything of that nature?
>
> MS. WOODS: No, sir.

Ex. D at 44-45.  The licensed clinical social worker, Kathleen Henchy, also

testified during that pretrial hearing that she had been C.W.'s counselor

since August 2008.  *Id.* at 67.  Ms. Henchy testified:

> Q And during your sessions have you had a[n] opportunity to
> discuss with her the difference between the truth and a lie?
>
> A Absolutely.  Many times.
>
> Q And could you explain to the Court how you went about that
> and whether or not she seemed to understand the difference
> between a truth and a lie?
>
> A Well, I've asked her point blank about if I told you this was a
> red crayon and it's a blue crayon is that a truth or a lie.  And
> she knows the difference between the truth or a lie and she
> knows that it's wrong to tell a lie.  We've played games like go
> fish, where, you know, you ask do you have a 10.  And I've
> taken that opportunity to establish that she knows the
> difference between telling the truth and not telling the truth.
> Just a number of therapeutic games and activities I've been
> able to establish that she clearly knows the difference between
> the truth and a lie.

*Id.* at 70-71.  The judge also questioned Ms. Henchy about C.W.:

> THE COURT: Did you assess in a general sense that she's a
> normal seven year old mentally and physically other than her
> speech impediment?
>
> MS. HENCHY: I think so.
>
> THE COURT: And you feel like she'd be competent to be a
> witness?

MS. HENCHY: I think she will tell the truth.  And if she's not frightened she'll talk about what happened.

*Id.* at 78.

Moreover, just before jury selection, the trial judge made findings on the record regarding the admissibility of child hearsay statements under section 90.803(23), Florida Statutes, and allowed the statements.  Ex. E at 3-9.  Those findings included the following:

And then the fifth factor by statute, the reliability of the victim. According to Ms. Jensen [sic], the child understands the difference between truth and falsehood.  She is a good and accurate historian.  Her mother gave similar testimony, that the child is generally a truthful historian and not subject to fabrication.

*Id.* at 7.

Petitioner Bell contends his trial counsel provided ineffective assistance by failing to challenge the competency of the child victim to testify at trial.  ECF No. 1 at 4.  Although defense counsel evidently did not directly challenge C.W.'s competency to testify at trial, and indeed stated that her testimony should "be offered as if it were any other testimony," Ex. E at 83, counsel did object to the procedure by which her testimony was presented (she testified in the courtroom while Bell was in a room nearby, watching on closed circuit television).  Ex. E at 81-84, Ex. F at 12, 123.

Defense counsel also cross-examined C.W. and attempted to impeach her testimony with previous statements she had made to others and in her deposition.  Ex. F at 138-49.  Given this record and the findings made by the state post-conviction court, set forth above, that court concluded that even if defense counsel had further challenged the child victim's competency to testify or raised additional objections thereto, the trial court would not have found the child victim incompetent.  Ex. N at 854.  The court applied <u>Strickland</u> and determined Bell did not establish deficient performance or prejudice.  *Id.* at 855.

Bell has not shown that the state court's adjudication of this ground involved an unreasonable application of clearly established federal law or that it based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

## Ground 2:  IAC – Failure to Object to Leading Questions

In his second ground, Bell asserts trial counsel was ineffective "for failing to object to leading questions" used by the State to demonstrate the child witness was capable of recollecting facts, and the state court erred in denying this claim.  ECF No. 1 at 7.  Bell raised this claim in his Rule 3.850

motion in state court.  Ex. N at 713-14.  In denying the claim, the state

post-conviction trial court made the following findings:

> Defendant claims that counsel was ineffective for failing
> to object to the use of leading questions when the State
> presented evidence from the victim.  Defendant cannot
> establish prejudice.  Even had counsel objected and the court
> sustained the objection, the State would have been able to
> rephrase the question.  The record also indicates that the victim
> gave damaging testimony against Defendant that did not come
> from leading questions.  *Exh. 2 - pp. 132-135.*  The State also
> elicited damaging admissions that Defendant made to Officer
> Kincaid.  *Exh. 2 - pp. 173-76.*  The totality of the evidence
> shows that even if the State had not been able to get the
> answers to the leading questions before the jury, there is not a
> reasonable probability that the outcome would have been
> different.  *Exh. 2.  See Id.*  This claim is denied.

*Id.* at 854-55.  This ruling, affirmed on appeal without opinion, is entitled to

deference and review is limited to the record before the state court.  *See*

Cullen, 131 S.Ct. at 1388.

The exhibits in the record support the state post-conviction trial

court's findings and determination that Bell did not prove deficient

performance or prejudice.  As that court indicated, if counsel had objected

to the leading questions, and the trial court had sustained the objections,

the prosecutor would have been able to rephrase the questions.  Ex. N. at

855.  Further, the trial transcript supports the court's finding that C.W. gave

damaging testimony against Bell that was not elicited by leading questions.

In particular, the prosecutor asked C.W. about Bell's actions toward her:

> Q Did he say bad things to you?
>
> A No.
>
> Q Did he ever touch you where he shouldn't have touched you?
>
> A Yes.
>
> Q Do you remember where he touched you where he shouldn't have touched you?
>
> A Yes.
>
> Q Where was that?
>
> A Back, my butt, and between my legs.
>
> Q Your back, your butt, and between your legs?
>
> A Yes.
>
> Q Now, when you say between your legs, is that where you go pee?
>
> A Yes.
>
> Q And did you want him to touch you in those places?
>
> A No.

Ex. F at 132; *see id.* at 132-35.

The trial transcript also supports the state post-conviction court's finding that the prosecutor elicited damaging admissions that Bell made to Sergeant Craig Kincaid. Specifically, Bell admitted to Sergeant Kincaid that he bathed C.W., he touched her vagina and butt when he was bathing her, he took photographs of C.W. on his bed, C.W. crawled into his bed in the middle of the night, he collected Barbie dolls and kept Barbie dolls in his room, he allowed C.W. to play with the dolls, and he also kept bags of C.W.'s cut hair "to have a little piece of her with him." Ex. F at 173-77; *see id.* at 59-60 (testimony of C.W.'s mother about photographs). In particular, concerning the bathing, Sergeant Kincaid testified:

> Q Okay. Did you ask him – when you were asking him questions about bathing C.W. did you specifically ask him if he touched C.W. during these bathing [sic], I guess, the times that he was bathing her?
>
> A I did. He admitted that he touch [sic] her. He admitted that he touched her vagina and her butt. He stated that at times he had seen her dirty, that there was dirt, leaves, twigs, small sticks up her vagina, hanging out of her vagina. He stated that after he bathed her, he would spread her vagina, and he indicated with his fingers like this and like this, that he would spread her vagina just to check to make sure she was clean up there, that there were no leaves or sticks or twigs (indicating).
>
> Q And did he indicate that the was done every time she was bathed?
>
> A He indicated that's how he used to bathe her.

*Id.* at 175.

C.W.'s mother testified that she did not ask Bell to bathe C.W. and was not aware that he had done so.  *Id.* at 54.  C.W.'s mother also testified that she cut C.W.'s hair and discarded the hair in the trash; she did not give the hair to Bell.  *Id.* at 65, 81-84.

Given this record and the findings made by the state post-conviction court, set forth above, that court concluded that even if the prosecutor had not been able to use the answers to the leading questions, there is no reasonable probability the outcome would have been different.  Ex. N at 855.  The court applied <u>Strickland</u> and determined Bell did not establish prejudice.  *Id.*

Bell has not shown that the state court's adjudication of this ground involved an unreasonable application of clearly established federal law or that it based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

## Ground 3:  IAC – State's Motion in Limine

In his third ground, Bell asserts his trial attorney was ineffective "for failing to object when defense counsel KNEW the prosecutor in this case KNEW that Ms. Alicia Woods had made prior false allegations against

David Curry for molesting their son years prior to this incident, and Alicia

Woods had made multiple false reports to DCF regarding the children 'they'

(Alicia Woods and David Curry) have in common."  ECF No. 1 at 10.  Bell

further asserts the trial court erred in denying his IAC claim "when defense

counsel failed to properly object and argue against the prosecutor arguing

a Motion in Limine to have this previous false molestation allegations made

by the ex-wife Alicia Woods suppressed for trial, all in violation of <u>Giglio v.

U.S.</u>," 405 U.S. 150 (1972).  *Id.* at 10.

As Respondent indicates, however, Bell did not exhaust this ground

in state court and it is now procedurally defaulted.  ECF No. 13 at 11-13.  In

particular, this claim was not raised in Bell's direct appeal from his

judgment and sentence in state court and he cannot now file another direct

appeal.  Therefore, this ground is procedurally defaulted, and Bell has not

alleged cause and prejudice, or a fundamental miscarriage of justice.  *See*

<u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999) ("Before a federal court

may grant habeas relief to a state prisoner, the prisoner must exhaust his

remedies in state court.").  *See also, e.g.*, <u>McNair v. Campbell</u>, 416 F.3d

1291, 1302 (11th Cir. 2005) (explaining exhaustion requirement: "[T]o

ensure that state courts have the first opportunity to hear all claims, federal

courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."); <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."); <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010) (explaining "[a] federal court may still address the merits of a procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice resulting from the alleged constitutional violation" or if fundamental miscarriage of justice exists because "'a constitutional violation has probably resulted in the conviction of one who is actually innocent'" (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986))).

In his reply, Bell points to a letter he wrote to his appellate attorney, directing her to file a reply brief in his direct appeal and include an argument challenging the trial court's admission of "illegally obtained evidence." ECF No. 17 at 6-7. Even had his appellate attorney done this, such would like prove insufficient because "[a]rguments raised for the first time in a reply brief are not properly before a reviewing court." <u>United</u>

States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir. 1994).  *See, e.g.*, Jones v.

State, 966 So. 2d 319, 330 (Fla. 2007) (explaining that appellate court

need not address argument raised for first time in reply brief); Fla. R. App.

P. 9.210(d).  Bell also points to the petition he filed in the First DCA alleging

ineffective assistance of appellate counsel for failing to argue in the appeal

that the State had violated Giglio.  *Id.* at 8-14.  Bell does not raise the issue

here, however, as one of ineffective assistance of appellate counsel;

rather, he raises it in terms of trial counsel IAC.

Regardless, as Respondent also indicates, even assuming Bell

exhausted this ground, it fails on the merits.  The Eleventh Circuit has

explained:

> In Giglio v. United States, . . . , the Supreme Court held
> that when the prosecution solicits or fails to correct known false
> evidence, due process requires a new trial where "the false
> testimony could in any reasonable likelihood have affected the
> judgment of the jury."  405 U.S. at 154.  Giglio error, which "is a
> species of Brady[3] error," exists "when 'the undisclosed
> evidence demonstrates that the prosecution's case included
> perjured testimony and that the prosecution knew or should
> have known, of the perjury.'" Ventura v. Att'y Gen., 419 F.3d
> 1269, 1276-77 (11th Cir. 2005) (quoting United States v. Agurs,
> 427 U.S. 97 . . . (1976)).

---

[3]Brady v. Maryland, 373 U.S. 83 (1963).

"To establish a <u>Giglio</u> claim, a habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment."  <u>Guzman v. Sec'y, Dep't of Corr.</u>, 663 F.3d 1336, 1348 (11th Cir. 2011).

<u>Trepal v. Sec'y, Fla. Dep't of Corr.</u>, 684 F.3d 1088, 1107-08 (11th Cir. 2012).  The Eleventh Circuit also explained that "[t]he <u>Giglio</u> materiality standard is 'different and more defense friendly' than the <u>Brady</u> materiality standard" as "for <u>Brady</u> violations, the defendant must show a reasonable probability that the result would have been different, but for <u>Giglio</u> violations, the defendant has the lighter burden of showing that there is any reasonable likelihood that the false testimony could have affected the jury's judgment."  *Id.* at 1108 (quoting <u>United States v. Alzate</u>, 47 F.3d 1103, 1109-10 (11th Cir. 1995)).

In addition, to prevail, a habeas petitioner "must show that a <u>Giglio</u> error resulted in 'actual prejudice' to him under the standard set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 . . . (1993)."  *Id.*  at 1110.  Even if a petitioner shows testimony was false about some things, and even assuming that false testimony can be imputed to the prosecutor and was

material under <u>Giglio</u>, the petitioner must still show he suffered actual

prejudice under <u>Brecht</u>.  *Id.*  The Eleventh Circuit has explained:

> [T]he <u>Brecht</u> Court concluded that the appropriate harmless-
> error standard for habeas review of criminal convictions was
> whether the constitutional error "had substantial and injurious
> effect or influence in determining the jury's verdict." . . . Thus, to
> grant habeas relief based on constitutional trial error, the
> federal habeas court must find not only that the error occurred,
> but that it "resulted in 'actual prejudice'," that is, "the error had
> 'substantial and injurious effect or influence in determining the
> jury's verdict.'" The <u>Brecht</u> standard "is more favorable to and
> less onerous on the state, and thus less favorable to the
> defendant, than the <u>Chapman [v. California</u>, 386 U.S. 18
> (1967),] harmless beyond a reasonable doubt standard."
>
> <u>Giglio</u> error is trial error, not a structural defect.
> Therefore, when considering a <u>Giglio</u> claim on federal habeas
> review, we can grant relief on that claim only if (1) the petitioner
> establishes that a <u>Giglio</u> error occurred, and (2) that error had
> "substantial and injurious effect or influence in determining the
> jury's verdict." <u>Brecht</u>, 507, U.S. at 637.

*Id.* at 1111-12 (citations omitted).  The court further explained that "a <u>Giglio</u>

error can be harmless under <u>Brecht</u> because the <u>Giglio</u> materiality standard

is lower than that of <u>Brecht</u>."  *Id.* at 1113.  Finally, "[b]ecause the <u>Brecht</u>

harmlessness standard is more strict from a habeas petitioner's

perspective than the <u>Giglio</u> materiality standard, federal courts confronted

with colorable <u>Giglio</u> claims in § 2254 petitions in many cases may choose

to examine the <u>Brecht</u> harmlessness issue first."  *Id.* at 1113-14.

Here, Bell asserts a <u>Giglio</u> claim as the basis of a claim of ineffective

assistance of trial counsel.  Bell has not asserted a colorable <u>Giglio</u> claim,

however.  As the Eleventh Circuit has explained, "Usually (indeed, in every

<u>Giglio</u> case in the Supreme Court or in this Court of which we are aware), a

witness at trial gives testimony that is later shown to be demonstrably

factually false."  <u>Trepal</u>, 684 F.3d at 1114-15.  Here, Bell's core <u>Giglio</u>

allegation is that Alicia Woods "had made prior false allegations against

David Curry for molesting their son years prior to this incident, and Alicia

Woods had made multiple false reports to DCF regarding the children 'they'

(Alicia Woods and David Curry) have in common."  ECF No. 1 at 10.  This

allegation was discussed during the pretrial hearing on the State's motion

in limine:

> MR. HALE [prosecutor]: . . . Essentially the Defense disclosed
> Mr. David and Courtney Curry as witnesses that would, based
> on my investigators interview of them, phone interview with
> them, that the victim's mother, Alicia Woods, previously, falsely
> accused David Curry, who's her ex-husband[,] of molesting
> their son, Lee, several years ago during divorce proceedings.
> And that apparently she's also made false reports to DCF
> regarding Lee and the other son that they have in common.
>
> Initially the State would point out that there's no indication
> these allegations are false.  And certainly Ms. Woods has not
> admitted to making false allegations or recanted these
> allegations.  I believe Ms. Woods was not even the one that
> made the allegations during the divorce proceedings.  I believe

it was another family member.  And certainly any kind of reports to DCF I don't think Ms. Woods made as well based on the State's understanding of an interview with her.

THE COURT: Let's make sure I understand the players.  Alicia Woods is the victim's mother?

MR. HALE: Yes, Your Honor.  Mr. Curry is her ex-husband. They've been divorced since basically I believe November 1999.  As to Ms. Courtney Curry I don't – the State's understanding is she was not even in the picture during at least the initial allegation during the divorce proceedings and any knowledge she would have of these allegations would be hearsay that she's gathered from her husband, Mr. Curry.  Ms. Woods isn't the victim in this case, she's also not the –

THE COURT: I think I got the picture.

. . . .

MR. STEIGER [defense counsel]: Judge, based on as far as the Curry's testimony goes the State cited the Yager case.  I would also cite the Cliburn case at 710 So. 2d 69 where prior false allegations were admitted.  In this case what happened is the little girl initial made – these allegations came to life because an investigation began by the alleged victim's mother going through my client's room.  The alleged victim's mother found some things that she testified to later she didn't know about.  The grandmother confronted the little girl, got the little girl to admit to or say that she was molested.  The next disclosure occurred to the mother with the grandmother present.  We would argue that the mother is heavily involved in these allegations and we would argue that it is relevant that she's made prior false allegations and that's what the Curry's are here to testify about if they're allowed to testify.  As far as –

THE COURT: I'll grant the [State's] motion in limine as to the Currys.

Ex. at 14-17.  Thus, as Respondent points out, the evidence Bell cites was the subject of a pre-trial motion in limine filed by the State, to preclude the admission of prior accusations of child abuse.  The evidence (regarding allegedly false prior accusations of child abuse made by Woods) was disclosed (indeed, by the defense), and the trial court decided to exclude it, granting the State's motion in limine.  Cf. Davis v. Terry, 465 F.3d 1249, 1253 (11th Cir. 2006) (explaining that Giglio applies to "undisclosed evidence").  The trial testimony of Alicia Woods – the witness whose testimony Bell takes issue with – has not been shown to be demonstrably factually false.

Further, as set forth in the analysis of Ground 2, supra, Woods' testimony was only part of the State's case against Bell.  The State also presented, in particular, the testimony of the child victim, her grandmother, and an investigating officer, Sergeant Kincaid, as well as photographs and a bag of C.W.'s hair, among other evidence.  Even assuming that Woods gave perjured testimony about some things (and nothing indicates she did) and that such testimony can be imputed to the prosecutor, Bell has not shown he suffered actual prejudice – that such false testimony "had substantial and injurious effect or influence in determining the jury's verdict"

and "more than a reasonable possibility that the error [false testimony] contributed to the conviction" –  as required under Brecht.  Trepal, 684 F.3d at 1110, 1114 (explaining "although the Brecht harmless error analysis 'is necessarily fact-specific and must be performed on a case-by-case basis, the erroneous admission of evidence is likely to be harmless under the Brecht standard where there is significant corroborating evidence, or where other evidence of guilt is overwhelming" (quoting Mansfield v. Sec'y, Dep't of Corr., 679 F.3d 1301, 1313 (11th Cir. 2012))).

Therefore, even assuming Bell exhausted this ground, it should be denied.  He has not shown a colorable Giglio claim and, accordingly, counsel cannot be ineffective for failing to raise such a claim.  Indeed, counsel tried to get before the jury the evidence of the allegedly prior false accusations by Woods; that the trial court excluded the evidence, by granting the State's motion in limine, does not amount to IAC.

### Ground 4:  IAC – Cumulative

In his final ground, Bell asserts he was cumulatively deprived of his right to effective assistance of counsel.  ECF No. 1 at 14-15.  The Eleventh Circuit has rejected such an argument in a § 2254 proceeding.  *See* Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (explaining

that "[t]he Supreme Court has not directly addressed the applicability of the

cumulative error doctrine in the context of an ineffective assistance of

counsel claim" but "the Supreme Court has held, in the context of an

ineffective assistance of counsel claim, that 'there is generally no basis for

finding a Sixth Amendment violation unless the accused can show how

specific errors of counsel undermined the reliability of the finding of guilt"

(quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984))).

Moreover, as each of the individual grounds fail, this ground likewise fails.

## Conclusion

Based on the foregoing, Petitioner Lymon Bell is not entitled to

federal habeas relief.  The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United

States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the

applicant," and if a certificate is issued "the court must state the specific

issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.  The Clerk shall substitute Julie L. Jones for Michael D. Crews as

Respondent.

      **IN CHAMBERS** at Tallahassee, Florida, on February 8, 2016.

             S/  Charles A. Stampelos
             **CHARLES A. STAMPELOS**
             **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

      **A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**